## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JENNIFER SAYRE, | : | |
| Plaintiff, | : | |
| | | Case No. 3:14cv00145 |
| vs. | : | |
| | | District Judge Thomas M. Rose |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

**I.     Introduction**

Plaintiff Jennifer Sayre brings this case challenging the Social Security Administration's denial of her applications for Disability Insurance Benefits and Supplemental Security Income.  She asserts here, as she did before the administration, that she has been under a benefits-qualifying disability – starting on September 1, 2010 – due to manic depressive disorder, bipolar disorder, chronic obstructive pulmonary disease (COPD), asthma, chronic bronchitis, anxiety, and pelvic inflammatory disease.

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

#12), the administrative record (Doc. #6), and the record as a whole.

## II. Background

### A. Plaintiff's Testimony

Plaintiff was 45 years old on her alleged disability onset date, placing her in the category of a "younger person" for purposes of resolving her claims for DIB and SSI. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c) .[2] She has a high school education. Her past relevant employment includes work as a machine operator, retail stock clerk, convenience store clerk, cook, warehouse worker, mold pourer, and customer order clerk.

At her administrative hearing in September 2012, Plaintiff testified she does not presently have a driver's license. (*PageID#* 70). She stated she previously had a license but lost it due to an OVI conviction in 2008. (*Id.*). She is in a dual support group for alcohol and drugs, and last drank on her birthday. She testified she had 3 "vodka and grapefruits." She stated she smoked marijuana about 3 or 4 years ago but since then only takes medication she is prescribed.

Plaintiff testified her present source of income is from her husband's monthly social security disability benefits ($812/month). (*PageID#* 74). She estimates she can sit for approximately 1 hour and stand for 10 to 15 minutes at a time. She can walk approximately two blocks before needing to sit down. She does not believe she can crouch or crawl. She can reach in all directions, and estimates she can lift approximately

---

[2] The remaining citations to the regulations will identify the pertinent Disability Insurance Benefits regulations with full knowledge of the corresponding Supplemental Security Income regulation.

10 pounds with her right and 5 pounds with her left hand. (*PageID#* 74). She estimates she can push or pull a shopping cart with 15 pounds in it for 10 to 15 steps. She was prescribed a cane two years ago. She can zipper, button, buckle, dress, undress, and take care of her personal hygiene on a daily basis. (*PageID#* 76). She can pick up coins, rubber bands, pencils, and other small items from a table that is in front of her. (*Id.*).

Plaintiff testified she lives with her husband on the upper level of a house. (*PageID#* 77). There are 18 steps to her residence. She tries only to go up and down the stairs once per day. She estimates the maximum number of times she has climbed and descended the stairs in the last two years is "five up and five down."[3] (*Id.*). She does not have any problem with her vision, hearing, sense of smell, and speech. She estimates she has panic attacks 15 times per month. She last went to the emergency room three months ago for an asthma attack. She was given breathing treatments and sent home with an inhaler.

Plaintiff does not have any sensitivity to bright lights, loud noise, or darkness. (*PageID#* 79). Airborne irritants such as dust, dog/cat danger, and mold aggravate her asthma. (*Id.*).

Plaintiff took some college courses in the culinary field. She is able to prepare food for herself and her husband. She can do laundry, but her husband carries it to and from the washing machine for her. (*PageID#* 80).

---

[3] She indicated she did this the month prior to the hearing. (*PageID#* 81).

When cross examined by her counsel, Plaintiff indicated that when she has panic attacks her breathing "gets real labored, I get blurry vision, I start crying uncontrollably. I just – I don't want to see or talk to anybody." (*PageID#* 81). The attacks last approximately 2 hours.

Plaintiff indicated she has periods of severe depression approximately 2 or 3 times a week. (*PageID#* 82). During these times, she "can't quit crying, can't talk on the phone, can't talk to [her] husband." (*Id.*) She sees a psychiatrist every 6 weeks and a therapist every 2 weeks. She also goes to group therapy twice a week.

Plaintiff estimated the last time she drank alcohol "regularly" was in September 2011, approximately 1 year before the hearing. She stated, "I got extremely drunk and think I ended up in the hospital." (*PageID#* 83). Prior to that, Plaintiff was drinking every other day. Since September 2011, and her birthday in February 2012, Plaintiff reported the only other time she drank was on New Year's when she "had a couple drinks . . . ." (*Id.*).

Plaintiff also reports manic-like symptoms occur once or twice a week. (*PageID#* 84). During this time, she experiences heavy breathing, racing thoughts, and an inability to "put things together mentally." (*Id.*). Plaintiff has been looking for work, and even tried sewing, but testified, "my hands get to where I can't do it. I couldn't do it on a full-time basis." (*PageID#* 84). She stated that if she did find a job, it would need to be part-time and include certain sitting and standing requirements. (*Id.*). She does not believe she could be dependable and reliable at a job because, "I'd get in one of my crying stages, and

when I get like that, I'm not functionable."

### B. Medical Evidence

The administrative record contains many medical records plus opinions from Plaintiff's treating and non-treating medical sources. A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because both the ALJ and Plaintiff's counsel have accurately summarized the relevant records concerning Plaintiff's physical and mental impairments with citations to specific evidence. The Commissioner likewise defers to the ALJ's factual recitation.

### III. "Disability" Defined and the ALJ's Decision

The Social Security Administration provides Disability Insurance Benefits (DIB) to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1)(D). The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job – *i.e.,* "substantial gainful activity," in Social Security lexicon.[4]  42 U.S.C. § 423(d)(1)(A); *see Bowen*, 476 U.S. at 469-70.

---

[4] In addition, the impairment must be one "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether Plaintiff was under a benefits-qualifying disability, ALJ Joseph P. Donovan, Sr., applied the Social Security Administration's 5-Step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)(4). Steps 2, 3, and 4 are the most significant in this case.

At Step 2, the ALJ concluded that Plaintiff had several impairments, namely, "bipolar/depressive disorder NOS; anxiety disorder; chronic obstructive pulmonary disease; degenerative disc disease; osteoarthritis; [and] history of alcohol abuse." (*PageID#* 46).

At Step 3, the ALJ concluded that Plaintiff's impairments or combination of impairments did not meet or equal the criteria in the Commissioner's Listing of Impairments, including Listings sections 12.04 and 12.06. (*PageID#* 47-48).

At Step 4, the ALJ concluded that Plaintiff retained the residual functional capacity[5]:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently; can sit 6 hours in an 8-hour day; can stand or walk for 6 hours out of an 8-hour day; can occasionally reach overhead; can occasionally climb ramps and stairs; can never climb ropes or scaffolds; can occasionally stoop, bend, and balance; can never kneel, crouch, or crawl; must avoid concentrated exposure to dusts, fumes, odors, and gases; must avoid all extreme temperatures, hazards, and industrial vibrations; can do simple, repetitive, unskilled tasks in a routine environment; can occasionally interact with the general public, supervisors, and coworkers; cannot performed [sic] timed tasks or meet rate quotas; can frequently respond to

---

[5] A social-security claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations. 20 C.F.R. § 404.1545(a); *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

>routine changes within the work setting; and would be off task 1% of the
>work day with 1% loss of productivity.

(*PageID#* 48-55).  The ALJ also concluded at Step 4 that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (*PageID#* 49).

The sum and substance of the ALJ's sequential evaluation ultimately led the ALJ to conclude that Plaintiff was not under a benefits-qualifying disability.

## IV.     Judicial Review

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r*

*of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . " *Rogers*, 486 F.3d at 241; *see Gentry*, 741 F.3d at 722.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.  "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

**V.**     **Discussion**

Plaintiff argues the ALJ erred in rejecting the opinion of medical expert, Ellen Rozenfeld, Psy.D, who appeared and testified at the administrative hearing held in September 2012.  (Doc. #7, *PageID#* 858-66).  Specifically, Plaintiff argues that, after considering Dr. Rozenfeld's testimony, the ALJ should have included as part of the RFC that she had a marked impairment in her ability to sustain concentration, persistence, and pace.  (Doc. #7, *PageID#* 858).  Instead, the ALJ concluded Plaintiff only had moderate difficulties in these areas.  (*PageID#* 48).  The Commissioner contends that "a review of the administrative record, the ALJ's decision, and the applicable legal authorities

establishes that the ALJ committed no legal error." (Doc. #11, *PageID#* 880-86).

In his decision, the ALJ summarized Dr. Rozenfeld's testimony as follows:

> At the hearing, Dr. Rozenfeld testified that the claimant's established medically determinable impairments are a mood disorder NOS, also described as bipolar disorder; generalized anxiety disorder; borderline traits or dependent personality traits; and a history of cannabis and cocaine abuse in sustained abuse, as well as alcohol dependence (Hearing Testimony). She appears to have episodic relapses in alcohol abuse, including December 2010, October 2011, December 2011, and June 2012 (*Id.*). Dr. Rozenfeld testified that the claimant's treatment has been focused on developed [sic] more effective coping skills, and she has been fairly good about attending her scheduled sessions (*Id.*). Dr. Rozenfeld noted that a major goal of her treatment is to obtain full time employment, and the claimant has been looking for work (*Id.*). However, Dr. Rozenfeld testified that the claimant has problems coping with stress, and likely could not sustain work (*Id.*). Additionally, Dr. Rozenfeld testified that claimant is in an abusive relationship with her husband and has focused on obtaining Social Security benefits in order to leave him (*Id.*). In terms of her functional limitations, Dr. Rozenfeld opined that she has he has [sic] a mild restriction of her activities of daily living, a moderate restriction in social functioning, and a moderate restriction in concentration, persistence, and pace (*Id.*). However, Dr. Rozenfeld opined that when it comes to sustaining concentration, persistence, and pace, the claimant is markedly limited (*Id.*). Finally, she has had one decompensation, but this was in the presence of alcohol abuse (*Id.*). Dr. Rozenfeld testified that her alcohol abuse has only been episodic since September 2010, and is related to her problems with stress tolerance (*Id.*). Dr. Rozenfeld noted that with some degree of financial independence and continued treatment, the claimant could likely sustain work (Hearing Testimony).

The ALJ further discussed the weight he was providing to Dr. Rozenfeld's hearing

testimony:

> The undersigned finds that the severe problems coping with stress that Dr. Rozenfeld described are not fully established in the record. Rather, the evidence shows that the claimant has an increase in symptoms during stressful times but maintains functioning. For example, in June 2012, the claimant reported a "rough week" that included family worries and a significant conflict with her husband (Exhibit 35F/15). Despite this, the claimant was appropriately groomed and dressed, displayed logical and linear thought processes with no delusional content, and had an "ok" mood with full range of mood and affect (*Id.*). Similarly, while the

9

> claimant sometimes has a constricted affect when experiencing additional stressors, she remains oriented and cooperative with treatment, with a normal appearance. (*Id.* at 10). Therefore, the undersigned gives limited weight to Dr. Rozenfeld's opinion.

(*PageID#* 53).  As correctly noted by the Commissioner, because Dr. Rosenfeld had no treating relationship with Plaintiff, the ALJ was not required to provide controlling weight to her opinion nor was he required to provide "good reasons" for rejecting it.  (Doc. #11, *PageID#* 881, citing 20 C.F.R. § 1527(d)(2)); *see Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010) (requirement to provide good reasons for the weight given to opinions "only applies to treating sources."); *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873 (6th Cir. 2007) ("SSA requires ALJs to give reasons for only *treating* sources.") (emphasis in original).   The ALJ discussed Dr. Rozenfeld's opinion testimony, but only provided it limited weight due to his finding that Dr. Rozenfeld's conclusions regarding Plaintiff's ability to cope with stress "are not fully established in the record."  (*PageID#* 53).  Instead, the ALJ gave great weight to the opinion of state agency psychological examiner, Michelle Hoy-Watkins, Psy.D.  (*PageID#* 52).  A review of the record indicates the ALJ's findings are supported by substantial evidence and should not be disturbed.

The Social Security regulations, rulings, and Sixth Circuit precedent provide that the ALJ is charged with the final responsibility in determining a claimant's RFC.  *See e.g.,* 20 C.F.R. § 404.1527(d)(2) (the final responsibility for deciding the RFC "is reserved to the Commissioner.").  Moreover, the Social Security Act and agency regulations require an ALJ to determine a claimant's RFC based on the evidence as a whole.  42 U.S.C. §

423(d)(5)(B), 1382c(a)(3)(H)(i)(incorporating § 423(d) for Title XVI); 20 C.F.R. § 404.1545(a) ("the ALJ . . . is responsible for assessing your RFC").  Social Security Ruling 96-8p instructs that the ALJ's RFC assessment must be based on all of the relevant evidence in the case record, including factors such as medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, and evidence from attempts to work.

20 C.F.R. § 404.1527(d)(2) also explains that "[a]lthough we consider opinions from medical sources on issues such as your RFC, . . . the final responsibility for deciding these issues is reserved to the Commissioner."  The regulations do not require an ALJ to rely solely upon medical opinions when formulating a RFC, but instead explicitly require an ALJ to evaluate medical opinions based on their consistency with and support from "medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1527(c)(2), (3), (4).  Indeed, as the Sixth Circuit has held, physician opinions "are only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence." *Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 287 (6th Cir. 1994).

The ALJ properly determined Dr. Rozenfeld's conclusions were not supported by the record and gave specific examples to support his finding.  Regarding Plaintiff's concentration, persistence, or pace, Dr. Rosenfeld believed Plaintiff's "concentration and attention is really moderately impacted, but with regard to sustainability, there is a marked

limitation." (*PageID#* 88). Dr. Rosenfeld also noted, Plaintiff "seems fairly vulnerable to stress." The ALJ recognized that Plaintiff's symptoms increased when she was stressed, but cited to a number of treatment notes indicating – contrary to Dr. Rosenfeld's belief – that Plaintiff still maintained her ability to function. *See PageID#* 53. As correctly noted by the ALJ, even during a "rough week" of very personal family worries and conflict with her husband, Plaintiff was appropriately groomed and dressed, had logical and linear thought processes with no delusion content, and had an "OK" mood with full range and affect. (*Id.*; *PageID#* 742). Plaintiff still reported crying, "but hadn't been crying as much." (*Id.*). She reported "[d]epression has been better overall." She could clean her house, go for walks, cook, and do crossword puzzles. (*Id.*). Other evidence also tends to support the ALJ's findings, such as Plaintiff's inconsistent testimony and the opinion of Dr. Michelle Hoy-Watkins, Psy.D. (*PageID#* 54, 512-514). Dr. Hoy-Watkins found in September 2010 that Plaintiff was no more than moderately limited in her ability to maintain attention and concentration for extended periods, as well as in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (*PageID#* 512-13). Dr. Hoy-Watkins' opinion was affirmed in June 2011 by Dr. Kristen Haskins, Psy.D. (*PageID#* 620). Although Drs. Hoy-Watkins and Haskins did not have access to evidence after their opinions were issued, the entire record was before the ALJ when he made his RFC determination. In fact, even Dr. Rosenfeld testified that she believed with "some financial freedom and with ongoing

treatments [Plaintiff] would be able to sustain competitive employment." (*PageID#* 87). In addition, most of the stressors experienced by Plaintiff, as cited by Dr. Rosenfeld, involve her allegedly abusive husband and financial concerns.[6] (*PageID#* 87).

Plaintiff further argues the ALJ incorrectly relied on Plaintiff's ability to do crossword puzzles and to quilt when determining she could "maintain concentration for fairly extended periods of time." (*PageID#* 48). Plaintiff contends, "The ALJ has failed to show how [her] level of daily activities show that she could perform work activity for eight hours a day, five days a week, fifty two weeks a year as required by the Social Security Act." (Doc. #7, *PageID#* 860). Plaintiff argues "[s]he can pursue such activities for a few minutes at a time and then set them aside." (*Id.*). Plaintiff's argument misses the mark. In essence, it appears Plaintiff believes that unless a claimant is doing an activity (i.e., crosswords) for the equivalent duration of a full-time job, it is impermissible for an ALJ to be able to consider such activities in formulating an RFC. Yet what Plaintiff fails to recognize is that while her activities may each be performed for only a portion of the day – and therefore when viewed in isolation may not provide significant insight into her ability to do *sustained* work – when viewed collectively by the ALJ they paint a much clearer picture regarding the level of activities capable of being performed on a sustained basis. In this case, despite her testimony to the contrary, the evidence indicates Plaintiff is a person who remains active throughout her days. As the ALJ noted, Plaintiff cleans her

---

[6] Dr. Rosenfeld further indicated that Plaintiff's relationship with her husband appears to be improving now that he has allegedly stopped abusing alcohol, (*PageID#* 92), and she is "focus[ing] on obtaining Social Security as a way to . . . give her some financial freedom." (*PageID#* 87).

home, takes walks outside, cooks, does crossword puzzles, quilts, cares for pets, and pulls weeds in the garden.  (*PageID#* 54).  As the ALJ further noted, "these activities also tend to show that the claimant is not as debilitated by her mental impairment as she reported at the hearing."  (*Id.*).  Accordingly, the record indicates substantial evidence also supports the ALJ's findings regarding Plaintiff's activities, specifically that her activities further indicate Plaintiff only has a moderate impairment in her ability to maintain concentration, persistence, and pace.  As the ALJ correctly applied the legal standards and substantial evidence supports his findings, Plaintiff's Statement of Errors lacks merit.

## IT IS THEREFORE RECOMMENDED THAT:

1. The Commissioner's non-disability determination be affirmed; and

2. The case be terminated on the docket of this Court.

April 24, 2015

                s/Sharon L. Ovington
                 Sharon L. Ovington
              Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981).